FILED & ENTERED

MAR 19 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zick DEPUTY CLERK

# NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

In re:

SHAWNA LYNN KIMBALL,

Debtor.

K.D. AND T.D., MINORS, BY AND THROUGH THEIR GUARDIAN AD LITEM, GENE DIFABRITIS,

Plaintiffs,

v.

SHAWNA LYNN KIMBALL, et al.,

Defendants.

Case. No. 9:11-bk-10402-PC

Adversary No. 9:13-ap-01181-PC

Chapter 7

**MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT, RAYMOND E. PENMAN, III'S MOTION FOR SUMMARY JUDGMENT**

Date: March 5, 2015
Time: 10:00 a.m.
Place: United States Bankruptcy Court
Courtroom # 201
1415 State Street
Santa Barbara, CA 93101

At the above captioned date and time, the court considered the Plaintiff's Motion for Summary Judgment ("Difabritis Motion") and the Defendant, Raymond E. Penman, III's Motion for Summary Judgment ("Penman Motion"). Having considered each motion, the opposition

thereto and the reply, the summary judgment record,[1] and argument of counsel, the court will (1) grant the Difabritis Motion against Kimball with respect to the First Claim for Relief made the basis of Plaintiffs' Complaint: (1) to Declare Debt Excepted from Discharge Pursuant to 11 U.S.C. §§ 523(a)(5), 523(a)(15) & 523(a)(4); and (2) Imposition of Constructive Trust [California Civil Code §§ 2224 & 3336] ("Complaint"); (2) deny the Difabritis Motion against Kimball with respect to the Second Claim for Relief; (3) dismiss the Third Claim for Relief as to Kimball with prejudice; (4) drop Penman as a defendant in this adversary proceeding and dismiss the Third Claim for Relief as to Penman without prejudice; and (5) deny the Penman Motion as moot, based on the following findings made pursuant to F.R.Civ.P. 56,[2] as incorporated into FRBP 7056 and applied to contested matters by FRBP 9014(c).

## I. STATEMENT OF FACTS

On January 27, 2011, Shawna Lynn Kimball ("Kimball") filed a voluntary petition under chapter 7 of the Bankruptcy Code and Jerry Namba ("Namba") was appointed trustee. In her schedules, Kimball disclosed in Schedule A that she did not own an interest in real property on the petition date. In Schedule B, Kimball disclosed personal property having a value of $32,805 consisting of cash, a damaged leased 2009 Mercedes, household goods, furniture and other personal property. Kimball's schedules also disclosed $147,373.21 in debt, consisting of $6,140 owing to Mercedes-Benz Financial and $141,233.41 primarily in credit card debt. The meeting of creditors was conducted and concluded on March 7, 2011, and Namba filed a Chapter 7

---

[1] The court sustains the Evidentiary Objection to the Declaration of Gene Difabritis in Support of Plaintiff's Motion for Summary Judgment and the specific objections set forth in the Evidentiary Objection to the Declaration of Robert Jones, C.P.A. in Support of Plaintiff's Motion for Summary Judgment. The objection of Robert E. Penman, III ("Penman") to the entirety of the declaration of Robert Jones, C.P.A. as not relevant is overruled.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

Trustee's Report of No Distribution on March 9, 2011. Kimball received a discharge on May 10, 2011, and the case was closed on May 17, 2011.

On August 8, 2013, Namba filed a motion to reopen the case based on a tip received from Kimball's ex-husband, Gene Difabritis ("Difabritis"), that Kimball had failed to disclose an interest in certain real property in which she was residing at 11832 Barranca Road, Santa Rosa Valley, CA (the "Subject Property"). On August 9, 2013, an order was entered reopening the case and authorizing the United States trustee to appoint a trustee. Namba was reappointed as trustee; and shortly thereafter, withdrew his no-asset report.

On September 20, 2013, Difabritis filed a motion alleging that Kimball, as a custodian of certain 529 custodial college savings accounts set up for their two minor children, had made unauthorized withdrawals from the accounts prior to bankruptcy. Difabritis sought an order appointing him as guardian ad litem for the two minor children for the purpose of filing "an adversary complaint against [Kimball] to, among other claims, (1) declare the debt owed by [Kimball] for the unauthorized withdrawals non-dischargeable and (2) revoke the discharge granted [Kimball] on May 20, 2011."[3] On October 17, 2013, the court entered an order appointing Difabritis guardian ad litem for his minor children, K.D. and T.D., in the case.[4]

On October 31, 2013, Difabritis filed the Complaint seeking (1) a judgment against Kimball for (a) $49,390.76 in unauthorized withdrawals from K.D.'s 529 custodial college savings account; (b) $49,950.33 in unauthorized withdrawals from T.D.'s 529 custodial college savings account; and (c) a declaration that such amounts are nondischargeable under §§ 523(a)(5), (a)(15) or (a)(4); and (2) a judgment against Kimball and Penman, jointly and severally, for conversion. On March 6, 2014, Penman filed an answer to Difabritis's Complaint in which Penman asserted, among other things, "that as to him, this action does not arise in or relates to Debtor's Chapter 7 proceedings and further [Penman] disputes the Court's jurisdiction

---

[3] Motion for Appointment of Guardian Ad Litem [Dkt. # 27], 3:9-12.

[4] Order Appointing Guardian Ad Litem [Dkt. # 34].

to hear this matter."[5] On March 26, 2014, Penman filed an amended answer in which he asserted, among other things, "that as to him, this this [sic] action does not arise in or relates to Debtor's Chapter 7 proceedings . . . [Penman] denies this is a core proceeding and [Penman] further objects to entry of final judgment or orders by the Bankruptcy Court. . . [Penman] demands a jury trial."[6] On March 7, 2014, Kimball filed an answer to Difabritis's Complaint. She amended her answer on March 26, 2014.

The Difabritis Motion was filed on January 13, 2015. Kimball did not respond to the Difabritis Motion. Penman filed his response in opposition to the Difabritis Motion on February 12, 2015, to which Difabritis replied on February 19, 2015. The Penman Motion was filed on January 22, 2015. Defabritis filed written opposition to the Penman Motion on February 12, 2015, to which Penman replied on February 19, 2015. Both motions were taken under submission after a hearing on March 5, 2015.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding as to Kimball under 28 U.S.C. § 157(b)(2)(A), (I) and (O), and a non-core proceeding as to Penman. Venue is appropriate in this court. 28 U.S.C. § 1409(a). Objections to the dischargeability of a debt are literally and strictly construed against the objector and liberally construed in favor of the debtor. See Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th Cir. 1997).

### A. Standard for Summary Judgment.

1. Rule 56(a) authorizes a party to "move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." F.R.Civ.P. 56(a). Summary judgment must be granted "if the movant shows that there is no

[5] Answer by Raymond E. Penman, III to Complaint Filed by K.D. and T.D. Minors, Through Their Guardian Ad Litem Gene Difabritis and Demand for Jury Trial [Dkt. # 21], 2:8-10.

[6] First Amended Answer by Raymond E. Penman, III to Complaint filed by K.D. and T.D. Minors, Through Their Guardian Ad Litem Gene Difabritis and Demand for Jury Trial [Dkt. # 26], 2:4-9.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

2. In determining whether a genuine factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . . If the evidence is merely colorable, or is not significantly probative, . . . summary judgment may be granted. Id. at 249–250. However, the court's function on a motion for summary judgment is "issue-finding, not issue-resolution." United States v. One Tintoretto Painting Entitled "The Holy Catholic Family With Saint Catherine and Honored Donor, 691 F.2d 603, 606 (2d Cir. 1982).

3. Rule 56 does not permit "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [fact finder] functions . . . ." Anderson, 477 U.S. at 255.

4. Rule 56(c), which identifies the procedures the court and parties must follow in conjunction with motions for summary judgment, states:

> (1) **Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) **Objection That a Fact Is Not Supported by Admissible Evidence**. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) **Materials Not Cited**. The court need consider only the cited materials, but it may consider other materials in the record.

> (4) **Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

F.R.Civ.P. 56(c). The court may grant summary judgment "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." See F.R.Civ.P. 56(e)(3).

5. The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.' " Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting former F.R.Civ.P. 56(e)); see Celotex, 477 U.S. at 323-24.

6. When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the Celotex showing can be made by "pointing out through argument-the absence of evidence to support plaintiff's claim"). If the nonmoving party fails to establish a triable issue "on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.

7. "If the court does not grant all the relief requested by the motion, it may enter an order stating that any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case. F.R.Civ.P. 56(g).

8. The court may, after notice and a reasonable opportunity to respond, grant summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. F.R.Civ.P. 56(f)(3).

B. Difabritis is Entitled to Summary Judgment Against Kimball on the First Claim for Relief Under 11 U.S.C. § 523(a)(5).

Section 523(a)(5) excepts from discharge a debt "for a domestic support obligation." 11 U.S.C. § 523(a)(5). Domestic support obligation includes a debt that accrues before, on or after the date of the order for relief owed to or recoverable by a child of the debtor or such child's legal guardian, that is in the nature of support if it is established by reason of applicable provisions of a separation agreement, divorce decree, or property settlement agreement. 11 U.S.C. § 101(14A). The summary judgment evidence establishes that:

- Difabritis is the father of two minors, K.D., now 15 years old, and T.D., now 13 years old.
- Kimball is the mother of K.D. and T.D.
- On July 11, 2007, a Judgment was entered in Case No D 308791, Difabritis v. Difabritis, in the Superior Court of California, County of Ventura.
- Paragraph 7 of the Marital Settlement Agreement ("MSA") attached to the Judgment states;

  **CHILDREN'S CUSTODIAL ACCOUNTS:** The parties acknowledge that the following are custodial accounts which shall be held by the parties jointly and used solely for the reasonable educational and related living expenses of their children through college subject to the following conditions:

  (1) HUSBAND and WIFE shall be consulted by the child concerned with respect to each educational institution that the child may desire to attend. HUSBAND and WIFE shall have the right to approve the educational institution; however, their approval shall not be unreasonably withheld;

  (2) The child shall be a regularly enrolled, full-time student at an educational institution maintaining at least a C grade point average or better at all times in a program of course leading to a bachelor's degree in order for HUSBAND and WIFE to continue paying said child's college expenses. Each child shall have the obligation to demonstrate by objective evidence that he or she is a full-time student making satisfactory continuous progress towards a bachelor's degree.

  (3) The term "educational expenses and related living expenses" shall include, but not be limited to, tuition, and related fees, books, room, board, and transportation to and from school or college. HUSBAND and WIFE will periodically meet with each

child after majority to review his or her budget to ascertain said educational expenses and related living expenses.

The parties further agree that any Judgment of Dissolution of Marriage obtained by either party, said Judgment shall include therein a provision pursuant to which the court retains jurisdiction over the parties and over the issue of the children's school expenses in order to carry out the terms of this Agreement relating to the following custodial accounts only:

(a) Morgan Stanley Dean Witter account number 0308-02, for the benefit of K.D. with a value of $92,328.82, as of December 31, 2006.

(b) Morgan Stanley Dean Witter account number 0308-014, for the benefit of T.D. with a value of $93,328.82, as of December 31, 2006.

HUSBAND and WIFE further agree that neither party shall remove any funds from the above custodial accounts without the express written consent of the other. The parties further acknowledge that even though the above language pertains to the children's college education, the parties may, by mutual written agreement, use said funds to pay the child's elementary and high school tuition and related school expenses.

In the event the children or either child elects not to go to college, any funds remaining in that child's account upon that child reaching age 21 shall be equally divided between HUSBAND AND WIFE.[7]

- At the time of the Judgment, Difabritis was the sole custodian of both accounts.
- Pursuant to a demand by Kimball on or about May, 2008, Difabritis transferred custodial control of 50% of the funds in each of the 529 custodial college savings accounts to Kimball.
- The amounts were deposited into separate 529 custodial college savings accounts under Kimball's custody and control.
- At the time of the transfer of custodial control to Kimball, K.D.'s account had a balance of $49,390.76 [representing 50% of the original balance] and T.D.'s account had a balance of $49,950.33 [representing 50% of the original balance].
- Between October 2008 and December 31, 2010, Kimbell withdrew funds from both 529 accounts and deposited those funds into her personal checking account.

---

[7] Appendix of Exhibits in Support of Motion for Summary Judgment With Authentication of Anthony N. Ranieri ("Appendix"), Exh. 4, at 9:19-10:24.

- Between October 1, 2008 and September 30, 2009, Kimball withdrew all but $1,548.14 from T.D.'s 529 account.
- Between October 1, 2008 and September 30, 2009, Kimbal withdrew all but $1,650.10 from K.D.'s 529 account.
- As of September 30, 2010, there remained a balance of $191.42 in K.D.'s 529 account
- As of June 30, 2010, there remained a balance of $231.92 in T.D.'s 529 account.
- None of the funds withdrawn from either 529 account have been repaid or reimbursed.
- Kimball's withdrawal of funds from the two 529 accounts was done without the knowledge or consent of Dafibritis.
- None of the withdrawn funds was used to pay for the educational expenses of K.D. or T.D.

Kimball owes a debt to K.D. and T.D., respectively, in the nature of support for educational and related expenses, which was established prior to bankruptcy pursuant to the provisions of the MSA. Thus, Kimball's obligation to each child fits within the statutory definition of a "domestic support obligation" under § 101(14A). Furthermore, the Ninth Circuit BAP has ruled that "a parent's obligation to pay a child's college education expenses pursuant to a settlement agreement or court order may be nondischargeable under § 523(a)(5) even though the parent does not have any legal duty to support a child once that child reaches the age of majority under applicable state law." In re Seixas, 239 B.R. 398, 403-404 (9th Cir. BAP 1999). "A contractually assumed debt for such expenses should be excepted from discharge if the parties intended it as support and if it can reasonably be construed as support. Id.

Based on the foregoing, the court finds that Kimball's debt to T.D. and K.D. is nondischargeable under 11 U.S.C. § 523(a)(5).

C. Difabritis is Not Entitled to Summary Judgment Against Kimball on the First Claim for Relief Under 11 U.S.C. § 523(a)(15).

Section 523(a)(15) excepts from discharge a debt "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the

course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. § 523(a)(15) (emphasis added). Having determined that the debts made the basis of the Complaint are domestic support obligations, Difabritis is not entitled to a summary judgment declaring the debts nondischargeable under 11 U.S.C. § 523(a)(15).

D. Difabritis is Not Entitled to Summary Judgment Against Kimball on the Second Claim for Relief Under 11 U.S.C. § 523(a)(4).

Section 523(a)(4) excepts from discharge debts incurred by "fraud or defalcation while [the debtor was] acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). A defalcation is the "misappropriation of trust funds or money held in a fiduciary capacity; failure to properly account for such funds." Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996). For the debts to be nondischargeable under § 523(a)(4), Difabritis had to establish that a fiduciary relationship existed between Kimball, on the one hand, and K.D. and T.D., on the other, at the time of the alleged defalcation. The Ninth Circuit has adopted a narrow definition of "fiduciary" for purposes of § 523(a)(4):

> "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt."

Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003). To satisfy this standard there must exist either an express or statutory trust prior to any wrongful acts. "The essential elements of an express trust are (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res." Banks v. Gill Distrib. Ctrs., Inc. (In re Banks), 263 F.3d 862, 871 (9th Cir. 2001). "The intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust." Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 n.2 (9th Cir. 1981). "Most courts today . . . recognize that the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type

obligations are imposed by statute or common law." LSP Investment P'ship v. Bennett (Matter of Bennett), 989 F.2d 779, 785 (5th Cir. 1993); see, e.g., Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1127 (9th Cir. 2003) ("[W]hile officers possess the fiduciary duties of an agent, they are not trustees with respect to corporate assets."); Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986) ( "[W]e hold that California partners are fiduciaries within the meaning of § 523(a)(4) . . . .").

Difabritis asserts that "[t]he express trust is specifically set forth in the MSA."[8] He further asserts that "[t]he 529 accounts are 'custodial accounts' to be held for the express purpose of funding K.D. and T.D.'s college education."[9] On that basis, Difabritis argues that the requisite fiduciary relationship existed for purposes of § 523(a)(4) when Kimball withdrew funds from each of the 529 accounts in violation of the MSA.

The summary judgment evidence does not support a finding that a fiduciary relationship within the meaning of § 523(a)(4) existed between Kimball and either K.D. or T.D. at the time of the alleged defalcation. First, paragraph 7 of the MSA does not establish a trust relationship between Kimball, on the one hand, and either K.D. or T.D. on the other. The language of paragraph 7 of the MSA does not contain words sufficient to create a trust. Second, the statements for College SAVE Plan Account # 4061-02 shows Kimball as "Account Owner" and K.D. as "Beneficiary;"[10] the statements for College SAVE Plan Account # 4061-01 show Kimball as "Account Owner" and T.D. as "Beneficiary;"[11] and amounts withdrawn from each account are paid by check from College SAVE Plan to Kimball "for the benefit of" the named beneficiary.[12] However, there is no evidence in the record, such as the account agreement with College SAVE Plan or the signature card for the account, establishing that each account was set

---

[8] Difabritis Motion, 17:3.

[9] Id. at 17:3-34.

[10] Appendix, Exh. # 5

[11] Id. at Exh. # 6

[12] Id. at Exh. # 7.

up in Kimball's name "as trustee' for the named beneficiary. Finally, an I.R.C. § 529 qualified tuition program is a vehicle to shelter gross income from federal taxation. Taxpayers making contributions to such a program are able to save for their children's education while sheltering from gross income and federal income taxation distributions and earnings attributable to the program. See 26 U.S.C. § 529. The court can find nothing in the statutory language of I.R.C. § 529 that would create the fiduciary relationship required by § 523(a)(4), and the Difabritis Motion does not cite any authority for the proposition that an I.R.C. § 529 account creates a trust relationship as a matter of law between an account owner and a designated beneficiary of such an account. For these reasons, Difabritis's Motion is denied to the extent that it seeks a determination that the debts owing to K.D. and T.D. are nondischargeable under § 523(a)(4).

E. Difabritis's Third Claim for Relief Will Be Dismissed With Prejudice as to Kimball and Dismissed Without Prejudice as to Penman.

Difabritis seeks summary judgment against Kimball and Penman on the Complaint's Third Claim for Relief for alleged conversion. In the Complaint, Difabritis alleges that "Plaintiffs are informed and believe that debtor Kimball transferred some or all of the funds from plaintiffs' 529 accounts to defendant [Penman] or otherwise expended plaintiffs' funds for the use and benefit of [Penman]."[13] Difabritis further alleges, in pertinent part, that:

> 25. Plaintiffs are informed and believe that their funds transferred to defendant Penman by debtor Kimball were used, in whole or in part, among other ill gotten gains, for the acquisition, maintenance and/or improvement of [the Subject Property].
>
> 26. Plaintiffs are informed and believe [Penman] knew, or in the exercise of reasonable care should have known, the funds transferred to him and/or used for his benefit by debtor Kimball were plaintiffs' funds held in trust by debtor Kimball for the sole use and benefit of K.D. and T.D., but nonetheless through fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act conspired with debtor to convert plaintiffs' funds for debtor's and Penman's own use and benefit.

---

[13] Complaint, 3:8-10.

> 27. By virtue of defendant Penman's and debtor's wrongful acts, they hold the converted funds, in the amount of $49,390.76 [K.D.'s funds] and $49,950.33 [T.D.'s funds], and the real property described above, as a constructive trustees for the benefit of plaintiffs.[14]

Difabritis seeks summary judgment on the Third Claim for Relief, asserting that "Kimball drew down precisely $49,213.44 from K.D.'s account and precisely $49,701.22 from T.D.'s account, and utilized that $98,914.66 windfall for her's and her boyfriend Penman's mutual benefit."[15]

1. Dismissal of Difabritis's Third Claim for Relief Against Kimball With Prejudice

Rule 56(f)(2) permits the court to grant judgment independent of the motion, and the court finds that dismissal of Difabritis's Third Claim for Relief against Kimball with prejudice is warranted. Having determined that the debts of Kimball to K.D. and T.D. are each nondischargeable as a "domestic support obligation" under § 523(a)(5), the determination of K.D. and T.D.'s disputed and unliquidated conversion claims against Kimball serves no purpose in this bankruptcy case.

The court takes judicial notice that the deadline to file proofs of claim expired on November 18, 2013. On November 7, 2013, Difabritis's counsel filed Proof of Claim # 3-1 on behalf of K.D. in the amount of $57,369.92 dated October 30, 2013, and Proof of Claim # 4-1 on behalf of T.D. in the amount of 58,066.99 dated October 30, 2013. The stated basis for each proof of claim is "Domestic Support Obligation per Court Judgment."

A proof of claim is deemed allowed absent objection.[16] No objection has been filed to either proof of claim. Neither proof of claim refers to a claim for conversion. Nor do K.D. and T.D. seek a determination that the conversion claim alleged against Kimball in the Complaint is nondischargeable. Therefore, K.D. and T.D.'s Third Claim for Relief as to Kimball falls within the scope of Kimball's discharge entered on May 10, 2011, and need not be adjudicated.

---

[14] Id. at 5:11-23.

[15] Difabritis Motion, 9:18-20.

[16] "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FRBP 3001(f).

2. Dismissal of Difabritis's Third Claim for Relief Against Penman Without Prejudice

Bankruptcy courts have subject matter jurisdiction of "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Lack of subject matter jurisdiction can be asserted by any party at any time or raised by the court sua sponte." Ryther v. Lumber Prods., Inc. (In re Ryther), 799 F.2d 1412, 1414 (9th Cir. 1986); see Bentley v. Bank of Coronado (In re Crystal Sands Props.), 84 B.R. 665, 666-67 (9th Cir. BAP 1988). In his answer, Penman questioned the court's subject matter jurisdiction as to the claims asserted against him in this adversary proceeding and again raises the issue in the Penman Motion.[17] Subject matter jurisdiction is determined as of the date the adversary complaint is filed. Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 n.2 (9th Cir. 1988). Difabritis's claims against Penman neither arise under title 11 nor do they arise in a case under the Bankruptcy Code. Difabritis's claims against Penman are, at best, non-core and related to Kimball's bankruptcy case. "[T]he test for determining whether a civil proceeding is related to a bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Fietz, 852 F.2d at 457 (emphasis in original). "A conceivable effect includes the alteration of the debtor's rights, liabilities, options, or freedom of action, as well as any impact on the handling or administration of the debtor's estate." PNC Bank, N.A. v. Rolsafe Int'l, LLC (In re Rolsafe Int'l, LLC), 477 B.R. 884, 895 (Bankr. M.D. Fla. 2012).

Even if subject matter jurisdiction properly attached upon the filing of the complaint, "a federal court has a continuing obligation to consider the appropriateness of retaining jurisdiction throughout the course of the proceeding." Linkway Investment Co. v. Olsen (In re Casamont Investors, Ltd.), 196 B.R. 517, 525 (9th Cir. BAP 1996). "[W]here it appears, based on the occurrence of subsequent events, that the pending adversary claims would no longer have a conceivable effect on the estate, the decision whether to retain jurisdiction over the pending claims and adversary proceeding is left to the sound discretion of the bankruptcy court."

---

[17] Penman Motion, 8:14-16. "Penman does not admit that jurisdiction properly lies in this Court with respect to the claims against him, and does not consent to entry of a final judgment and seeks a jury trial in the event this matter goes to trial."

Rolfsafe Int'l, 477 B.R. at 896. In making that determination, the court must consider the following factors: (1) judicial economy; (2) convenience; (3) fairness; and (4) comity. Casamont Investors, 196 B.R. at 523-24. These factors are similar to those the court must consider in determining misjoinder under Rule 21.

Rule 21 states, in pertinent part, that "[m]isjoinder of parties is not a ground for dismissing an action[,]" but "on its own, the court may at any time, on just terms, add or drop a party." F.R.Civ.P. 21. "Rule 20(a)(2) permits the joinder of parties as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." F.R.Civ.P. 20(a)(2). In this case, Difabritis's Third Claim for Relief against Kimball and Penman arose out of the same transaction or occurrence and Kimball and Penman share some common questions of law or fact. However, the fact that Penman meets the threshold requirements of permissive joinder under Rule 20(a)(2) does not translate into joinder as a matter of right.

Even if defendants would otherwise be properly joined under Rule 20(a)(2), the court must determine "whether they should be allowed to continue in one action." Applewhite v. Reichhold Chemicals, Inc., 67 F.3d 571, 574 (5th Cir. 1995). "Although the specific requirements of Rule 20 . . . might be satisfied, a trial court must also examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fairness and judicial economy." Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980).

> The Rules seek to preserve the autonomy of the parties, but that goal is not without limits. Rule 19 serves to insure the presence of an "essential core" of parties and issues, to avoid a multiplicity of suits. Rule 20 permits the Court to add parties but to avoid unduly complicating the proceeding. Rule 21 serves both functions. The duty of the Court in considering a motion to add or drop a party is to strike a balance among these competing considerations, while following the initial mandate "to secure the just, speedy and inexpensive determination of every action."

Stark v. Ind. Sch. Dist. No. 640, 163 F.R.D. 557, 564 (D. Minn. 1995). Because permissive joinder is within the court's discretion, the court may drop a party pursuant to Rules

20 and 21 if to do so would "foster judicial efficiency, while protecting parties against prejudice." Id.; see Lyn v. Transamerica Small Bus. Capital, Inc., (In re Lyn), 483 B.R. 440, 448 (Bankr. D. Del. 2012) ("The Court must weigh the costs, benefits, interest of justice, judicial economy, and convenience.").

Although the adversary proceeding has been pending for 16 months, "the court has 'expended few judicial resources' on the matter." See Casamont Investors, 196 B.R. at 524. The Difabritis Motion and the Penman Motion represent the only contested matters undertaken in this adversary proceeding since Kimball and Penman answered the Complaint. Kimball has not actively defended this adversary proceeding since filing her amended answer on March 26, 2014. No trial has been set and all issues of nondischargeability raised in the Complaint have been adjudicated. The outcome of Difabritis's dispute with Penman will have no conceivable effect on Kimball's "rights, liabilities, options, or freedom of action" nor the administration of her bankruptcy estate. See Rolsafe Int'l, 477 B.R. at 895. Furthermore, the court notes that Difabritis sought to reopen Kimball's bankruptcy for the stated purpose of filing an adversary proceeding to obtain a determination that the debt owed by Kimball is non-dischargeable and to revoke Kimball's discharge. Difabritis then sued Penman for conversion.[18] The case was not

[18] "Conversion is defined as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Itano v. Colonial Yacht Anchorage, 267 Cal.App.2d 84, 89 (Ct. App. 1968).

> "The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of property rights, and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his or her own use. **Conversion is also a strict liability tort.** The foundation for the action for conversion rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of what may be called an absolute duty; the act itself is unlawful and redressible as a tort. Therefore, questions of good faith, lack of knowledge, and motive are ordinarily immaterial."

Oakdale Vill. Grp. v. Fong, 43 Cal.App.4th 539, 541(1996).

reopened to permit two non-debtor parties to litigate in the bankruptcy court a claim that arises under state law and can be timely adjudicated in state court – a court of general jurisdiction that can provide complete relief to Difabritis and Penman.

Any inconvenience to the parties by a dismissal as to Penman at this time is outweighed by other considerations of fairness which do not favor retention. While Penman may be a proper party as to K.D. and T.D.'s Third Claim for Relief, Penman is neither a necessary nor indispensable party and the court has broad discretion to drop a party pursuant to Rule 21 and to dismiss without prejudice as to such party if to do so would serve the interests of justice. Difabritis can maintain an action directly against Penman in state court for alleged conversion without the joinder of Kimball. See Oakdale, 43 Cal.App.4th at 549-50 (After Wang, who converted partnership assets from Oakdale, filed bankruptcy, Oakdale sued Fong for conversion and recovery of the Oakdale assets transferred by Wang to Fong).

Not only is the court's subject matter jurisdiction tenuous, but the court does not have the power to enter a final judgment if Difabritis's claims against Penman remain for adjudication in this court. See Stern v. Marshall, ___ U.S., ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 572-73 (9th Cir. 2011). While this proceeding is "core" as to Kimball, it is a non-core related proceeding as to Penman. Penman does not consent to entry of a final judgment on K.D. and T.D.'s Third Claim for Relief. As previously stated, Penman disputes the court's jurisdiction to adjudicate the claim against him, denies that as to him this is a core proceeding, and objects to entry of final

---

> "[T]he receipt of possession of converted goods by way of sale, pledge, gift, or otherwise with the intent to acquire a proprietary interest in the goods" constitutes "an act of conversion," and "[t]his is true even where the person receiving possession acts innocently and in reasonable ignorance of the owner's interest in the property." … "[O]ne receiving a chattel from a third person with intent to acquire a proprietary interest in it is liable without a demand for its return by the person entitled to possession, although he takes possession of the chattel without knowledge or reason to know that the third person has no power to transfer the proprietary interest. The mere receipt of the possession of the goods under such circumstances is a conversion."

Regent Alliance Ltd. v. Rabizadeh, 231 Cal.App.4th 1177, 1182 (2014).

judgment or orders by this court.[19] Penman has also made a jury demand.[20] Penman may have a Seventh Amendment right to a trial by jury on K.D. and T.D.'s Third Claim for Relief. A bankruptcy court does not have authority to conduct a jury trial absent consent of the parties, and Penman does not consent. 28 U.S.C. § 157(e); see Taxel v. Elec. Sports Research (In re Cinematronics), 916 F.2d 1444, 1451 (9th Cir. 1990). Both factors weigh against retention.

Comity does not favor retention of jurisdiction. Difabritis's claims against Penman for conversion arise under state law. Furthermore, the Subject Property upon which Difabritis seeks imposition of a constructive trust is not property of the estate. Penman holds title to the Subject Property. On September 30, 2013, Namba filed a complaint against Kimball and Penman in Adversary No. 9:13-ap-01166-PC, styled Namba v. Kimball, et al., seeking to avoid and recover certain transfers of estate property used to acquire and maintain the Subject Property and authority to sell the Subject Property pursuant to § 363(h). By order entered on December 2, 2014, the court approved a compromise of the disputed claims in such adversary proceeding under the terms of which (1) Penman will pay $70,000 to Namba secured by a deed of trust on the Subject Property; (2) Adversary # 9:13-ap-01166-PC will be dismissed with prejudice; and (3) Namba and Penman will execute a mutual release of claims.

Finally, dismissal of this adversary proceeding without prejudice as to Penman will not be prejudicial to Difabritis because a subsequent suit by Difabritis against Penman will not be time barred in the event of dismissal. See DirecTV, Inc. v. Leto, 467 F.3d 842, 846-47 (3d Cir. 2006) ("Discretion to drop and dismiss claims against misjoined defendants under Rule 21 is abated when it 'prejudic[es] any substantial right' of plaintiffs, which includes loss of otherwise timely claims if new suits are blocked by statutes of limitations."). According to the Complaint, Difabritas discovered the unauthorized withdrawals on September 12, 2013.[21] The statute of

---

[19] Id.

[20] The court makes no determination at this time as to the timeliness of Penman's jury demand in this adversary proceeding or whether Penman's jury demand satisfied the requirements of F.R.Civ.P. 38 or LBR 9015-2.

[21] Complaint, 3:18.

limitations for conversion claims in California is three years. Cal. Code Civ. P. § 338(c)(1). Therefore, limitations should not run on the conversion claim asserted against Penman until September 12, 2016. Based on the foregoing, the court finds that it should not retain jurisdiction of this adversary proceeding as to Difabritis's claims against Penman, that Penman should be dropped as a party to this adversary proceeding pursuant to Rule 21, and that that Difabritis's Third Claim for Relief against Penman should be dismissed without prejudice.

CONCLUSION

For the reasons stated, the court will enter an order (1) granting the Difabritis Motion against Kimball with respect to the First Claim for Relief made the basis of Plaintiffs' Complaint under § 523(a)(5); (2) deny the Difabritis Motion against Kimball with respect to the Second Claim for Relief; (3) dismiss the Third Claim for Relief as to Kimball with prejudice; (4) drop Penman as a defendant in this adversary proceeding and dismiss the Third Claim for Relief as to Penman without prejudice; and (5) deny the Penman Motion as moot.

A separate order will be entered consistent with this memorandum.

###

Date: March 19, 2015

Peter H. Carroll
United States Bankruptcy Judge